OHIO EDISON COMPANY, APPELLEE, *v.*
CONSOLIDATED RAIL CORPORATION,
APPELLANT, ET AL. (THREE CASES.)

(No. 1889 [Wayne County]; Nos. 3580
and 3596 [Lorain County]—Decided
March 28, 1984.)

*Bruce D. Parish* and *Daniel A.
Cook,* for appellee.

*K. Richard Augenbaugh,* for ap-
pellant.

MAHONEY, J. These causes were
heard in separate counties at separate
times upon the record in the trial court,
including the transcripts of proceedings,
and the briefs. The Wayne County ap-
peal was heard February 9, 1984, and
the Lorain County appeals were heard
February 23, 1984. They were argued by
counsel for the parties and submitted to
the court. We have reviewed each as-
signment of error and make the follow-
ing disposition.

Defendant Consolidated Rail Corp-
oration appeals the taking of three aerial
easements over its properties in Wayne
and Lorain Counties. We affirm.

Plaintiff-appellee, Ohio Edison Com-
pany ("Edison"), is a public utility.
Defendant-appellant, Consolidated Rail
Corporation ("Conrail"), is engaged in
the business of interstate railway trans-
portation. Both companies possess the
statutory power of eminent domain. The
instant cases were commenced by Edi-
son filing complaints in the courts of
common pleas in Wayne and Lorain
Counties seeking to appropriate aerial
easements for power lines over Conrail's
land in North Ridgeville and Avon in
Lorain County and in Chippewa Town-
ship, Wayne County, Ohio. Both trial
courts permitted the appropriations and
determined the amounts Conrail should
receive as compensation.

Conrail appeals both orders. Be-
cause three of the issues raised in each
appeal are identical, we will discuss the
legal ramifications of both cases to-
gether.

In Wayne County Appellate No.
1889 and Lorain County Appellate Nos.
3580 and 3596, Conrail contends:

Assignment of Error 1

"The trial court erred in entering
judgment in favor of the plaintiff-
appellee without a determination on the
issue of the necessity of the appropria-
tion as mandated by Ohio Revised Code
Section 163.09."

R.C. 163.08 provides in part:

"Any owner may file an answer to such petition. Such answer shall be verified as in a civil action and shall contain a general denial or specific denial of each material allegation not admitted. The agency's right to make the appropriation, the inability of the parties to agree, and the necessity for the appropriation shall be resolved by the court in favor of the agency unless such matters are specifically denied in the answer and the facts relied upon in support of such denial are set forth therein * * *."

R.C. 163.09(B) further states:

"When an answer is filed pursuant to section 163.08 of the Revised Code, and any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation are specifically denied in the manner provided in such section, the court shall set a day, not less than five nor more than fifteen days from the date the answer was filed to hear such questions. Upon such questions, the burden of proof is upon the owner. * * *"

Conrail's answers to all three complaints do not specifically deny the necessity of the appropriation. Nor do they set forth any facts to indicate that Edison's easements are unnecessary. Thus, we find no error on the part of the trial court in proceeding on to the issue of compensation, pursuant to R.C. 163.09(C).

### Assignment of Error 3

"The trial court erred in ordering that appellee is entitled to appropriate the subject property insofar as the property is essential to the purposes of appellant, a corporation also possessing the power of eminent domain."

R.C. 4933.15 provides in part:

"Any company organized for manufacturing, generating, selling, supplying, or transmitting electricity, for public and private use, may, for the purpose of making preliminary examinations and surveys, enter upon any land held by any individual or corporation, whether acquired by purchase, appropriation proceedings, or otherwise, unless such land is owned by and essential to the purposes of another corporation possessing the power of eminent domain, and may appropriate so much of such land, or any right or interest therein, including any trees, edifices, or buildings thereon, as is deemed necessary for the erection, operation, or maintenance of an electric plant, including its generating stations, substations, switching stations, transmission and distribution lines, poles, towers, piers, conduits, cables, wires, and other necessary structures and appliances, or for rights of way over such land and adjacent lands for the purpose of access to any part of such land. * * *"

R.C. 4931.06 delineates the authority of a telegraph company to appropriate land held by a railroad as follows:

"The right of a telegraph company to use lands held by a railroad company, for the permanent structures of the telegraph, is limited to land which lies within five feet of the outer limits of the right of way of the railroad, if it is practicable to erect the line within those limits. When the telegraph company seeks to appropriate lands that lie beyond those limits, its petition filed pursuant to section 163.05 of the Revised Code shall also set forth facts showing that it is impracticable to erect its line within such limits, and shall designate, by a survey map, by reference to monuments, or by other means of easy identification, the place where the company seeks to establish the line. If such petition is controverted by the railroad company in the manner provided for in division (B) of section 163.09 of the Revised Code, the court shall determine whether the erection of the

line at the place designated will in any material degree interfere with the practical uses to which such railroad company is authorized to put the land. If satisfied that it will so interfere, the court shall reject the petition, or require the structure to be erected at such other place as it directs."

Clearly, R.C. 4931.06 applies to electric companies as well. R.C. 4933.14. Thus, the mere fact that Conrail possesses the power of eminent domain does not bar the appropriation. Rather, Edison may appropriate the easements at issue unless the airspace is essential to Conrail's purposes or the power lines will, to a material degree, interfere with the railroad's operation.

### Assignment of Error 4

"The trial court erred in failing to find that the appropriation sought by plaintiff-appellee would interfere with the essential purpose and practical uses of defendant-appellant."

Conrail argues that its operations could possibly be halted during the installation process and during subsequent maintenance of the lines. In light of the safety requirements imposed on Edison by the trial court's orders, this contention lacks merit.

Conrail also alleges that, should the wires sag, train traffic might be interrupted. The record clearly reveals that Edison proposes to erect its lines some sixty feet above the tracks, almost twice the height standards set by the National Electric Safety Code. Further, should the lines sag or decay, Conrail has a remedy pursuant to R.C. 4931.13.

Finally, Conrail claims that Edison's lines might cause inductive interference to its communication system. However, Edison intends to cross the lines at a ninety-degree angle to prevent this occurrence.

In Wayne County Appellate No. 1889, Conrail contends:

### Assignment of Error 2

"The trial court's adoption of the plaintiff-appellee's valuation of the easement being appropriated and damage to the residue was against the manifest weight of the evidence and deprived defendant-appellant of its constitutional right to just and full compensation."

The record contains competent, credible evidence to support the trial court's determination of damages. We cannot reverse. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

*Judgments affirmed.*

BAIRD, P.J., concurs.

GEORGE, J., concurs in part and dissents in part.

GEORGE, J., concurring in part and dissenting in part. Edison may appropriate only so much of Conrail's interest as is deemed necessary for Edison's erection, operation and maintenance of its electric transmission lines. R.C. 4933.15. The certificate of appropriation should contain such restrictions and safety requirements as are essential to the continued operation of Conrail's business. Obviously, safety requirements should not be less for Edison than those demanded of Conrail. In the Lorain County cases safety conditions were made part of the judgment. However, safety conditions were not included in the Wayne County case. Thus, I would remand the Wayne County case for the inclusion of the necessary safety conditions.